EBENEZER HARDS V. PLATTE VALLEY IMPROVEMENT
COMPANY.

FILED JANUARY 9, 1896.   No. 7835.

1. **Corporations**: SUBSCRIPTIONS FOR STOCK    The mere mis-
management of the affairs of a corporation will not release a
stockholder from his obligation to pay for the stock subscribed
by him.

2. **Trial**: DIRECTING VERDICT.   It is the duty of a trial court to
direct a verdict for the plaintiff if the evidence would not sup-
port a finding for the defendant.

3. ———: ———: EVIDENCE   The evidence examined, and *held* to
justify an instruction of the district court to the jury to return
a verdict for the plaintiff.

ERROR from the district court of Merrick county.   Tried
below before SULLIVAN, J.

*W. R. Watson* and *John Patterson*, for plaintiff in error.

*J. W. Sparks* and *A. Ewing, contra.*

RAGAN, C.

Ebenezer Hards subscribed for $100 of the capital stock
of the Platte Valley Improvement Company, a corporation
organized under the laws of the state of Nebraska for the
purpose of erecting and operating a hall for the use of so-
cieties, organized meetings, etc.   The domicile of the cor-
poration was Central City, in Merrick county.   Of the
amount subscribed by him, Hards paid $15, and this suit
was brought by the corporation against him to recover the
balance.   At the close of the evidence the jury, in obe-
dience to an instruction of the district court, returned a
verdict for the corporation, and to reverse the judgment ren-
dered thereon Hards has prosecuted to this court a petition
in error.

The assignments of error argued may all be included under one head, viz.: That the verdict and judgment are not supported by sufficient evidence. One of the defenses interposed by Hards to the action in the court below was that the promoters of the corporation represented to him that if he would subscribe for $100 of the capital stock of the corporation, that its entire authorized capital stock of $4,000 would then have been subscribed for by good, lawful, solvent, and good-faith subscribers; that, relying upon these representations, he subscribed for the $100 of capital stock, and that such representations were false when made, and that the full amount of the authorized capital stock of the corporation, including his subscription, was not then taken and had never been taken. We find in the briefs of counsel a copy of a written opinion filed in the case by the district judge who tried the case. In this opinion the district court, speaking to this defense of the plaintiff in error, said: "I assume that the pleading is faultless, and proceed to inquire whether the defendant has made a case on the evidence. The burden of proof is on him. He must produce evidence tending in some degree to sustain the allegations of his answer or else fail in his defense. He says Stitzer, a promoter of the corporation who procured Hards' subscription, told him there were forty shares taken by good, responsible, *bona fide* subscribers. This is the important representation. If it was made and proved to be false as to the number of subscribers, their responsibility or good faith, there can be no recovery in this action. Whether the subscribers were good or not is immaterial, unless the word is used as synonymous with responsible, about which there may be doubt. It is conclusively shown that there were fifty-three shares of the stock of this corporation actually subscribed, and there is no evidence tending to show there was not at least forty shares taken by solvent *bona fide.* subscribers." With this disposition of the defense under consideration made by the district court

we entirely agree, after an examination of the evidence in the record. Another defense interposed to the action by Hards was that he was induced to make the subscription sued upon because of representations made to him by the promoters of the corporation that it had obtained a lease of certain real estate in Central City from one Brinninger & Hostetter for ninety-nine years, and that this representation was false. We have been unable to find any evidence in the record which tends to sustain this defense, and upon looking into the opinion filed in the case by the district court we find his views as to this defense expressed as follows: "The representations, with reference to the lease from Brinninger & Hostetter, are, I am satisfied, well pleaded. But they are not, as it seems to me, sustained by a scintilla of proof." Another defense interposed by Hards was that some of the subscribers to the capital stock of the corporation had been induced to make such subscriptions upon representations made to them by the promoters that the capital stock of the corporation was to be $6,000.

Recurring again to the opinion of the district court filed in the case we quote with approval what he says as to this defense: "But the defendant insists that some of these shares were taken in view of an increased capitalization and therefore should not be counted. It is perfectly clear there was no change in the capital stock. One was in contemplation by some of the members, and it is true that some of the shareholders may have become such upon the supposition that the capital stock was $6,000. But they make no complaint; they have not repudiated their connection with the company. Besides the defendant is not their chosen champion. He cannot strengthen his defense by exploiting their grievances. The fact remains that this corporation has outstanding fifty-three shares of its stock, and the defendant has not produced evidence tending to show that there are less than forty of such shares in the

hands of *bona fide* and responsible subscribers." Still another defense interposed by Hards was that the corporation or its managing officers had permitted the persons, of whom the corporation leased the real estate on which was, or was to be, erected the corporation's building, to incumber such real estate with a mortgage of $2,000. This averment, if true, constituted no defense to the action, as the mismanagement of the affairs of a corporation will not release a stockholder from his obligation to pay for the stock subscribed by him. (*Chetlain v. Republic Life Ins. Co.*, 86 Ill., 220.) And once more we quote with approval that part of the opinion of the district court directed to this defense: "The defendant complains of the mismanagement of the affairs of the corporation, but that has not been held to release the stockholder from his contract to pay for his stock. When the defendant became a stockholder in the plaintiff corporation he became entitled to all the benefits, and subject to all the burdens incident to that relation. Had there been gains, he would have shared in them ; and since there have been losses, he should, in common justice, help to bear them. If officers of a corporation act *ultra vires* to the prejudice of the stockholders, the latter, as the owners of the corporate property and franchises, may by a prompt intervention annul their acts and they may effectively invoke the restraining powers of the court to keep them within the scope of their delegated authority. Mismanagement of corporate officers, whether known or unknown to stockholders, will not operate to cancel the obligations of the latter to the corporation. The stockholders bear the same relation substantially to the corporate officers that the *cestui que trust* bears to the trustee, and has for the protection of his interest in the corporation the same remedies that are provided for the beneficiary in a trust estate. To these remedies he must resort, or bear the consequences of his omission so to do." If the jury had returned a verdict in favor of the plaintiff in error, it would have lacked evidence to support

it.   It would have been the duty of the district court to have set it aside, and therefore the court did not err in directing a verdict for the corporation, and its judgment is

AFFIRMED.